| | |
|---|---|
| TIMOTHY COURCHAINE<br>United States Attorney<br>District of Arizona<br><br>GAYLE L. HELART<br>Assistant U.S. Attorney<br>California State Bar No. 151861<br>PATRICK E. CHAPMAN<br>Assistant U.S. Attorney<br>Arizona State Bar No. 025407<br>Two Renaissance Square<br>40 N. Central Ave., Suite 1800<br>Phoenix, Arizona  85004<br>Telephone:  602-514-7500<br>Email: gayle.helart@usdoj.gov<br>Email: patrick.chapman@usdoj.gov<br>Attorneys for Plaintiff | ☐ FILED   ☒ LODGED<br><br>**Oct 20 2025**<br><br>CLERK U.S. DISTRICT COURT<br>DISTRICT OF ARIZONA |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>      vs.<br><br>Varsha Patel,<br><br>           Defendant. | No. CR-24-01529-001-PHX-SPL<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, VARSHA PATEL, hereby agree to resolve this matter on the following terms and conditions:

**1.    PLEA**

The defendant will plead guilty to Count 2 of the Indictment charging the defendant with a violation of 18 U.S.C. §§ 1952(a)(3)(A) and 2, Using a Facility of Interstate Commerce in Aid of Racketeering Enterprises, and did aid and abet such offense, a Class D felony offense.

**2.    MAXIMUM PENALTIES**

a.    A violation of 18 U.S.C. §§ 1952(a)(3)(A) and 2 is punishable by a maximum fine of $250,000 or twice the gross pecuniary gain (18 U.S.C. § 3571(d)), whichever is

greater, a maximum term of imprisonment of five (5) years, or both, and a term of supervised release of up to three years. A maximum term of probation is five years and a minimum term of one year if probation is imposed.

  b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

    (1) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

    (2) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

    (3) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

  c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

  d. The defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. The defendant agrees that defendant has discussed this eventuality with defendant's attorney. The defendant nevertheless affirms that defendant wants to plead guilty

regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

3. **AGREEMENTS REGARDING SENTENCING**

    a. <u>Stipulation: Sentence of Probation.</u> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that defendant's sentence shall be a term of five years' probation.

    b. <u>Restitution</u>. The government will not seek restitution in this case.

    c. <u>Employment / Occupation:</u> The defendant agrees that she will not own, operate or manage, any business as a motel/hotel in any location in any jurisdiction for a period of five years from the sentencing in this matter. The defendant further agrees that before seeking employment with a motel/hotel business, including as an employee, independent contractor, or in an unpaid capacity, she must seek permission of her supervising probation officer for a period of five years from the sentencing in this matter.

    d. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose.

    e. <u>Non-Binding Recommendations:</u> The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a

recommendation.

  f. <u>Acceptance of Responsibility</u>.  If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a).  If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

  a. This office shall not prosecute VARSHA PATEL for any offenses reflected in the investigation by the United States that resulted in the charges in the Indictment.  At sentencing the government agrees to dismiss Counts 1, 3-37, and 42-44, which all pertain to VARSHA PATEL.

  b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

  a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

  b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated.  In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.  The defendant understands that any

statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.     WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7.     DISCLOSURE OF INFORMATION**

a.     The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.     Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

  c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

    (1) criminal convictions; and

    (2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8.** **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

  a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

  b. The defendant agrees to forfeit, and hereby forfeits, all interest in the assets identified below that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense(s), or which was used to facilitate the commission of the offense(s):

- The real property located at Lots 27 and 28, of Bethany Main Plat 2, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, recorded in Book 61 of Maps, Page 28, commonly known as 2510 West Palo Verde Drive, Phoenix, Arizona 85017;
- $18,422.98 seized from State Bank of India Bank Account ending in 1032;

- $10,455.50 seized from State Bank of India CD Account ending in 8740;
- $26,148.16 seized from State Bank of India CD Account ending in 1744;
- $34,827.32 seized from JP Morgan Chase Bank Account ending in 3895;
- $7,820.70 seized from JP Morgan Chase Bank Account ending in 9963;
- $33,199.47 seized from Bank of America Bank Account ending in 1660;
- $19,453.42 seized from Bank of America Bank Account ending in 1312;
- $43,842.13 seized from Bank of America Bank Account ending in 1743;
- $13,571.83 seized from Bank of America Bank Account ending in 3289;
- $30,000 in U.S. currency seized from Bank of America Safe Deposit Box Z3500 in Phoenix, Arizona;
- $457,250 in U.S. currency seized from JP Morgan Chase Safe Deposit Box 628 in Phoenix, Arizona;
- 81 pieces of jewelry seized from JP Morgan Chase Safe Deposit Box 628 in Phoenix, Arizona;
- $6,070 in U.S. currency seized from 2510 West Palo Verde Drive, Phoenix, Arizona 85017; and
- $43,568 cash in lieu of the forfeitable equity in the real property located at Lot 12 of Tract No. 14019-1, in the City of Chino Hills, County of San Bernardino, as per map recorded in Book 255 of Tract Maps, Pages 1 through 4, Records of said county, commonly known as 16193 Vermeer Drive, Chino Hills, California, 91709.

The defendant further agrees to waive all interest in the assets identified above in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance

with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c). Forfeiture of the property listed above is intended to be exhaustive as to the defendant.

   c. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings with respect to the property listed above as may be appropriate now or in the future.

   d. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions concerning the property listed above, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

   e. The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that it will not contest civil, administrative or judicial forfeiture of the listed property. The defendant agrees to waive its right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

   f. This agreement shall not be construed or invoked in such a manner as to interfere with or oppose the forfeiture of the property listed above.

g. The defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above, or in connection with the seizure or return of other property in connection with the offense. Without limitation, the defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that it is a "substantially prevailing party" for the purpose of recovery of attorney's fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## 9. ELEMENTS

**Using a Facility of Interstate Commerce in Aid of Racketeering Enterprises**

**18 U.S.C. § 1952(a)(3)(A)**

On or between October 1, 2019, and September 17, 2024, in the District of Arizona and elsewhere:

1. The defendant used a facility of interstate commerce, namely, the internet to conduct an electronic banking transaction, with the intent to promote and carry on and facilitate the promotion and carrying on of prostitution and maintaining a drug premises; and

2. After doing so, the defendant performed an additional electronic banking transaction to promote prostitution and maintaining a drug premises.

## 10. FACTUAL BASIS

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

Sarang Hospitality LLC, aka the Royal Inn, was a motel located at 2510 West Palo Verde Drive, Phoenix, Arizona 85017, near Bethany Home Road and the I-17 highway, and was registered as a business with the Arizona Secretary of State as of approximately November 7, 2012. VARSHA PATEL was Sarang Hospitality

LLC's sole member. VARSHA PATEL lives in California. The day-to-day, on-site manager at the Royal Inn was Nilam Patel. The Royal Inn had approximately 23 motel rooms for rent.

From at least October 2019 through September 23, 2024, Phoenix Police Department responded to numerous calls for service from residents, business owners, and school officials near the Royal Inn. These calls for service typically involved prostitution, drug usage, and attendant crimes. Between May 2015 and July 2023, Phoenix Police Department officials made approximately nine (9) abatement contacts with individuals affiliated with the Royal Inn, to include one contact with VARSHA PATEL on June 12, 2023. The abatement contacts all related to the high volume of calls for services at the premises, were made to bring the rampant criminal activity to the attention of the Royal Inn's owner and management, and always contained suggestions for remediation. In the one contact with VARSHA PATEL on June 12, 2023, Phoenix Police Department officials met in person with Nilam Patel at the Royal Inn. During that meeting, Nilam Patel called VARSHA PATEL, and Phoenix Police Department officials spoke with VARSHA PATEL for approximately six minutes. During that call, Phoenix Police Department officials described criminal activity occurring at the Royal Inn and read a one-page letter advising that civil enforcement action might be taken against the Royal Inn if such activity continued. On July 6, 2023, a law enforcement officer personally served VARSHA PATEL with a copy of that same one-page letter at her home in California. After all contacts, the Phoenix Police Department noticed no difference in criminal activity.

In February 2023, the Phoenix Police Department and the Federal Bureau of Investigation began a long-term joint investigation on the Royal Inn activities to determine the individuals with knowledge of the criminal activities occurring there. The joint investigation included, but was not limited to: (1) setting up a pole camera focused on the Royal Inn which recorded 24 hours a day, 7 days a week; (2) using

undercover officers to pose as sex workers and sex buyers; (3) using undercover officers to pose as drug buyers; (4) gathering witness statements from school officials, business owners, and residents in the area around the Royal Inn; and (5) conducting a financial investigation as to money received from the room rentals.

In sum, the investigation determined that Nilam Patel knowingly rented rooms to sex workers and sex buyers, and those engaged in drug activities. She appeared to decline rentals to legitimate people or families. Nilam Patel charged an average of approximately $200 per night. Nilam Patel charged $120 for two-hour room rentals if before 3:00 p.m. The pole camera footage confirmed witness statements that sex workers, provocatively dressed in revealing and scant clothing, walked to and from the Royal Inn rooms to the area on 27th Avenue in Phoenix known as "the blade." The blade is an area in a city known for a high volume of prostitution and drug activity. The undercover detective work confirmed that rooms facing the south were generally for the drug dealers and rooms facing the north were for the sex workers. The undercover detectives purchased drugs several times, including with the four individuals charged in the indictment in Counts 38-41.

The financial investigation showed that the money and credit card income was deposited into a main bank account and then dispersed into an additional 14 accounts owned and/or operated by four people—VARSHA PATEL, her spouse, her adult daughter, and Nilam Patel. The main account, titled "Sarang Hospitality LLC," funded the mortgage payments of the Royal Inn, paid a few mortgage payments for VARSHA PATEL's residence in California, and paid for a credit card where several personal expenses were charged. A second account, which received funds from the main Sarang Hospitality account, paid the majority of VARSHA PATEL's mortgage payments to her California residence. A third account paid for several life insurance policies, including in the names of VARSHA PATEL and her spouse.

I am aware that the Sarang Hospitality bank account from 2017 to 2023

showed there to be an average annual income (i.e. deposits) of $241,000. This annual income, as compared to the observations made by law enforcement and witness statements, supported the conclusion that several tens of thousands of dollars of estimated revenue were not deposited into the bank account. For example, even assuming the Royal Inn charged $170 per night (as opposed to $200 as the undercover detectives and witnesses were charged), the total amount of $241,000 for 365 days ($660 per day, more or less) supports the conclusion that revenue for only four rooms was deposited when the investigation observed a busy motel business. Or, for example, when the analysis considered an average of 16 rooms rented (a 70% occupancy rate) which was also more consistent with the undercover detective observations and witness statements of the Royal Inn being busy, the average annual income at $170 per room per night would have resulted in approximately $992,800.

None of the four account holders were found to have any legitimate employment income from any other source during this period. Therefore, the Royal Inn earnings funded by prostitution and drug dealing activities were used to support the lifestyles of at least these four adults. The property identified in Section 8 of this Plea Agreement constitutes proceeds of the offense or was purchased with proceeds of the offense.

b.   The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

//

**APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

This agreement has been read to me in my native language of Gujarati. I understand it and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter this guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and

may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

\_\_06-23-2025_____  _____
Date                                                       VARSHA PATEL
                                                           Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide

effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

I was present when this agreement was read to the defendant in her native language of Gujarati on the  17th  day of  June , 2025.

 June 17, 2025 
Date

*[signature: Matthew Jacobs]*
MATTHEW JACOBS
Attorney for Varsha Patel

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

 10/8/2025 
Date

*[signature: Patrick E. Chapman]*
GAYLE L. HELART
PATRICK E. CHAPMAN
Assistant U.S. Attorneys

## ACCEPTANCE BY THE COURT

_____
Date

_____
HONORABLE STEVEN P. LOGAN
United States District Judge

- 15 -