Matthew Jacobs
The Jacobs Law Firm, PC
5743 Corsa Avenue, Suite 208
Westlake Village, CA 91362
Telephone: (805) 601-7504
Email: matt@jacobslawfirm.com

*Attorney for Defendants Varsha Patel
and Sarang Hospitality, LLC*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>VARSHA PATEL,<br><br>　　　　　Defendant. | Case No. CR-24-1529-SMB<br><br>SENTENCING MEMORANDUM OF VARSHA PATEL |

Defendant Varsha Patel is a 57-year-old married mother of two adult children. She appears before this Court deeply remorseful for her misconduct, which stands as an aberration in an otherwise law-abiding and service-oriented life. After learning of the Government's investigation, Ms. Patel promptly accepted responsibility for her actions, worked in good faith toward a resolution with the Government, consented to the forfeiture of substantial assets, and agreed to voluntarily return to the United States. As noted in the Government's sentencing memorandum, she "engaged in negotiations early in the process" in an "elevated a substantive way," which "not only saved the government significant resources, but also allowed the government's forfeiture process to work more quickly." Government Sentencing Memorandum ("Gov. Mem."), ECF 163 at 6:11-17.

For the reasons set forth in this memorandum, Ms. Patel respectfully submits that the stipulated probationary sentence in Ms. Patel's plea agreement, which the Probation Office joins in recommending, is "sufficient, but not greater than necessary to comply with the purposes" of sentencing." *United States v. Christensen*, 732 F.3d 1094, 1099 (9th Cir. 2013).

**I.   Factual History**

The relevant factual history and offense conduct are accurately described in the Factual Basis section of Ms. Patel's plea agreement, *see* ECF 144 ¶ 10, and in the Presentence Investigation Report ("PSR"), *see* PSR ¶¶ 6-50. Ms. Patel acknowledges those facts and, as she has from the start, accepts full responsibility for her actions. Ms. Patel offers no excuse for her misconduct. Her acceptance of responsibility is (and has always been) sincere, reflecting genuine remorse and a deep commitment to making amends for her mistakes.

**II.  Guidelines Calculation and Sentencing Recommendation**

Ms. Patel agrees with the Guidelines calculations set forth in the PSR, namely a total offense level of 10 and a Criminal History Category of I, corresponding to a Zone B

advisory grange of 6-12 months.[1] As reflected in the plea agreement and the Government's sentencing memorandum, the Government and Ms. Patel stipulated to a sentence of five years' probation, coupled with provisions (1) restricting her from owning, operating, and managing any hotel or hotel business while on probation; (2) forfeiting the Royal Inn property (and all equity therein); and (3) forfeiting a substantial portion of her and her family's remaining assets.

The Government has asked the Court to accept the stipulated sentence, noting that the negotiated resolution "serves a significant value for the community and will result in a substantively reasonable sentence providing appropriate punitive measures and deterrence." Gov. Mem. at 2:10-14. The Probation Office also recommends a non-custodial sentence. In the "Sentencing Recommendation" section of the PSR, the Probation Office states that a term of custody followed by a period of supervised release is "not recommend." PSR at 23. Rather, consistent with the stipulated resolution reflected in the plea agreement, the Probation Office recommends a five-year term of probation, based on a downward variance pursuant to 18 U.S.C. § 3553(a). *Id.*

Ms. Patel agrees with the Government and the Probation Office that a probationary sentence is appropriate under the circumstances and consistent with the requirements of 18 U.S.C. § 3553(a). Accordingly, Ms. Patel joins with the Government and the Probation Office in respectfully requesting that the Court approve the stipulated sentence set forth in the plea agreement.

---

[1] As noted in the Government's sentencing memorandum and in the PSR, Ms. Patel "clearly demonstrated acceptance of responsibility." *See, e.g.*, PSR ¶ 61; *see also* Gov. Mem. at 6:19-7:1. As the Court knows, defendants accepting responsibility generally receive a reduction of three offense levels—two levels pursuant to U.S.S.G. § 3E1.1(a) and one level pursuant to U.S.S.G. § 3E1.1(b). But because Ms. Patel's base offense level is too low to trigger U.S.S.G. § 3E1.1(b)'s one-point reduction, the Probation Office (correctly) applied a reduction of only two offense levels. Notably, that third acceptance of responsibility point *would have* brought Ms. Patel's total offense level down to 9 (corresponding to an advisory Guidelines range of 4-10 months)—just one offense level above the 0-6 month Zone A ranges.

3
SENTENCING MEMORANDUM OF VARSHA PATEL

### III. Applicable Law

Like all those facing sentencing, the law requires that the Court judge Ms. Patel not solely by the worst conduct in which she has ever engaged, but by her life and character as whole. That principle lies at the heart of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Sentencing Guidelines advisory and reaffirmed the Court's longstanding view that,

> the federal judicial tradition [requires] the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Gall v. United States*, 128 S. Ct. 586, 598 (2007) (*quoting Koon v. United States*, 518 U.S. 81, 113 (1996)).

When imposing sentence, the Ninth Circuit directs the sentencing court to,

> (1) correctly calculate the Sentencing Guidelines range; (2) treat the Guidelines as Advisory; (3) consider the 18 U.S.C. § 3553(a) factors; (4) chose a sentence that is not based on clearly erroneous facts; (5) adequately explain the sentence; and (6) not presume that the Guidelines range is reasonable.

*United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir. 2010) (brackets omitted or deleted).

Meanwhile, the parsimony clause of Section 3553(a) requires courts to "impose a sentence sufficient**, but not greater than necessary**, to comply with purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a) (emphasis added). Those factors include "the need for the sentence imposed" to:

(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) afford adequate deterrence to criminal conduct;

(C) protect the public from further crimes of the defendant; and

(D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Section 3553(a) also instructs courts to consider "the history and characteristics of the defendant."

For the reasons set forth in the subsections below—which address various Section 3553(a) factors—Ms. Patel respectfully submits, consistent with recommendations of the Government and the Probation Office, that the stipulated sentence is "sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553(a)(2).

## IV. Sentencing Factors

### A. Ms. Patel's History and Characteristics

Ms. Patel was born and raised in India. PSR ¶ 74-75. Her father died when Ms. Patel was young, leaving her mother to raise three children while also bearing the responsibility of providing financially for the family. *Id.* Despite the very modest, and often challenging, circumstances of her childhood, Ms. Patel was blessed to grow up in a loving home. She was also blessed at a relatively young age to have the opportunity to immigrate to the United States with her mother and siblings. PSR ¶ 76.

Soon after arriving in the United States, Ms. Patel married her husband, Praful Patel, with whom she has shared a devoted marriage for decades. Together, they raised two children: their son, Bhumes, now 33, who serves as a monastic monk—a venerated position within the Patel's religious order—and their daughter, Priya, now 26, who lives with her parents, in part, to assist with Ms. Patel's medical care, and who is building a promising career in graphic design. PSR ¶ 77.

Ms. Patel's life has long been anchored in faith and service. She is a deeply religious woman and a devout member of the *Bochasanwasi Akshar Purushottam Swaminarayan Sanstha* ("BAPS"), a Hindu denomination that emphasizes humility, charity, and service to others as spiritual imperatives. For decades Ms. Patel has attended temple on a daily basis, and has structured her life around this commitment. When she and her husband relocated from Mississippi to California, for example, they chose the city of Chino Hills because they wanted to be as close as possible to the BAPS temple there—one

of only seven major BAPS temples in the United States. A photograph of the main sanctuary of the Chino Hills BAPS temple is below:

The BAPS philosophy teaches that service to others is inseparable from spiritual life. The opening words on the "Who We Are" portion of the BAPS website state: "Many ask, 'How can you mix spirituality and social service?' We ask, 'How can you separate the two?'"[2] Similarly, the motto of BAPS' late spiritual leader is: "*In the joy of other lies our own. In the progress of others rests our own.*"[3]

The BAPS credos are not merely words to Ms. Patel; they are the codes she has tried to live by throughout her life. Each morning, Ms. Patel attends early prayer services at the temple before devoting hours to volunteer work. Much of that work (especially in recent years) involves preparing meals[4] for members of the temple community and visitors. On an average day, she helps prepare food for approximately 200 people; on festival days, that number can exceed 500. Despite significant health challenges, including

---

[2] https://www.baps.org/About-BAPS/WhoWeAre.aspx

[3] https://www.baps.org/News/2022/PSMCC-Mahila-21849.aspx

[4] BAPS forbids the consumption of meat. As part of their commitment to *ahimsa* (*i.e.*, non-violence) and spiritual purity, BAPS adherents follow a strict vegetarian diet that excludes all meat, fish, poultry, and eggs.

a rare, painful, and disfiguring form of skin cancer (further described in § IV.B, *infra*), Ms. Patel has continued to serve her community, adjusting her duties as necessary in light of her health challenges but never withdrawing from service altogether. Even when her condition significantly limited her mobility (and effectively prevented her from engaging in outdoor activities), she contributed in other ways large and small—from assembling flower garlands to supporting myriad temple activities behind the scenes.

But Ms. Patel's role and value within her community extend far beyond volunteer labor. For many years, she has served in what may best be described as an outreach and support role for members of the temple and the broader Hindu community in Southern California. At a surface level, this role includes contacting community members to share information about temple events and gatherings.

In reality, however, her contributions are far more meaningful. Ms. Patel does not merely make calls as a scheduler or organizer; instead, she has devoted herself to cultivating genuine, lasting relationships within the community. Through her consistent presence and compassion, she ensures that individuals know they have someone they can rely on for guidance, comfort, and support. Over time, she has become exactly that for countless people—a trusted confidante, a steady presence, and a source of reassurance during life's most difficult moments.

Ms. Patel's support is not abstract or occasional. When a member of the community needs a shoulder to cry on, a warm meal (or many meals), or a safe place to stay for a night (or many nights), Ms. Patel is the person they turn to. In this way, she has become a safe harbor for many, particularly young adults experiencing family conflict or personal challenges. She opens her home and offers her time generously and without hesitation, reflecting a level of compassion and selflessness that is unique even among the very religious.

The letters submitted to the Court (under separate cover) illustrate this point with striking consistency. Multiple individuals recount how Ms. Patel welcomed them into her home during difficult periods, ensured they were fed and cared for, and provided genuine

emotional support. Several writers describe how she routinely cooked meals for others, checked in on their wellbeing, and offered encouragement during moments of doubt or stress. Others describe her stepping in to care for children, supporting young adults navigating school or personal challenges, and quietly ensuring that no one felt alone or forgotten. Ms. Patel is frequently described as a "second mother," "Varsha Auntie" or in other endearing terms.

Importantly, these acts were not isolated or performative. They occurred over years and across many relationships. Friends, neighbors, extended family members, and young adults all independently describe the same qualities: kindness, reliability, generosity, patience, and a deep sense of responsibility for others. Ms. Patel consistently places others' needs before her own, and in doing so embodies the best of her religious tradition.

Even during periods of serious illness, Ms. Patel continued to prioritize others. She continued caring for her family and remaining emotionally present for those who relied on her, even when her own health challenges seemed overwhelming. Her resilience in the face of illness, coupled with her unwavering commitment to service, has left a lasting impression on many.

Notwithstanding the offense conduct (which Ms. Patel fully acknowledges and does not seek to minimize), she remains committed to serving others. Ms. Patel's life has been marked by consistency—in her faith, in her devotion to family, and in her commitment to helping others without expectation of reward or recognition. The letters submitted in support underscore what counsel's words alone cannot fully convey—that Ms. Patel is a stabilizing and uplifting presence in her community, and her absence would be deeply felt by many who rely on her for guidance, care, and support.

### B.    Ms. Patel Suffers from Serious Health Conditions

For approximately 13 years, Ms. Patel has been battling a rare type of skin cancer, *mycosis fungoides*, which has significantly limited her daily activities and forced her to live a largely sedentary life. The radiation treatments Ms. Patel has undergone to stop the cancer's spread have caused painful burns and scarring across large parts of her body. Ms.

Patel almost never ventures into the sun, and when she does, she must be fully covered by UV-resistant clothing. She lives with constant discomfort and pain, which can make even the most basic movements and passive positions (including sitting and laying) difficult to endure.

Attached to the sentencing letter of Ms. Patel's daughter, Priya Patel (*see* pages 3-5 of 14), are three photographs that show how Ms. Patel's skin disease, and the radiation treatments required to fight it, have altered her appearance over the years. Ms. Patel previously provided the Government with medical records from Kaiser Permanente substantiating her *mycosis fungoides* diagnosis, which the Government alludes to in its Sentencing Memorandum. *See* Gov. Mem. at 7:17. The PSR also notes that, "In 2013, she was diagnosed with mycosis fungoides, a rare skin disease which requires aggressive radiation treatment." PSR ¶ 80. Because there appears to be no material dispute among the parties or the Probation Office regarding Ms. Patel's health, counsel has not attached Ms. Patel's voluminous and confidential Kaiser Permanente records as an exhibit to this memorandum. But counsel will promptly supply them if the Court considers those materials helpful or necessary.

Ms. Patel does not suggest that her health challenges in any way excuse her misconduct; they do not. But given how dramatically Ms. Patel's illness has impacted her life over the last 13 years, it is simply not possible to present a complete picture of Ms. Patel's "history and characteristics" without describing her health struggles. 18 U.S.C. § 3553(a)(1); *see also* 18 U.S.C. § 3553(a)(2)(D) (requiring that courts consider the need for the sentence imposed to provide the defendant with medical care in the most effective manner); *see also* 18 U.S.C. § 3661 (prohibiting any limitations on information concerning a defendant's background that may be considered at sentencing).

### C. The Need to Protect the Public

Perhaps no duty of the sentencing court is more important than the obligation to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). For the reasons set forth above, Ms. Patel respectfully submits that she presents no risk to

public safety whatsoever—and neither the Government nor the Probation Office have ever suggested otherwise. Thus, Ms. Patel respectfully submits that this factor weighs in favor of the stipulated sentence.

      **D.**      **The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

Section 3553(a)(2)(A) requires courts to consider the need for the sentence imposed to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Ms. Patel acknowledges the seriousness of her offense and the harm it caused. She also agrees with the Government that the "plea agreement . . . reflects the seriousness of the offense because she is agreeing to forfeit the Royal Inn, her source of income for over a decade," Gov. Mem. at 7:24-25, as well as substantial additional assets. The public and highly conspicuous shuttering of the Royal Inn (which has been visibly boarded for over a year) promotes respect for the law, especially within the local community. Ms. Patel respectfully submits that her agreement to forfeit all interest in the Royal Inn—and a substantial amount of her family's remaining assets—especially when combined with the stipulated probationary term and restrictions on future employment is sufficiently punitive to satisfy the requirements of 18 U.S.C. § 3553(a).

      **E.**      **The Need to Afford Adequate Deterrence**

Section 3553(a)(2)(B) requires that a sentence "afford adequate deterrence to criminal conduct." Deterrence includes specific and general components. As the Government states in its Sentencing Memorandum, "[t]he plea agreement promotes specific deterrence in that Varsha Patel will be prohibited from working in the hotel/motel industry during the time she is on probation. She is also losing her business, real property, and significant assets because she and other Royal Inn stakeholders refused to operate the business legally." Gov. Mem. at 8:5-8. Ms. Patel agrees with the Government that the stipulated sentence will have a deterrent effect generally. As the Government explains, "other motel and hotel businesses . . . cater to allow criminal activities" and the resolution

of this case—including the visible forfeiture of real property—puts those entities on notice of consequences of such conduct. The law requires "**adequate** deterrence," 18 U.S.C. § 3553(a)(2)(B) (emphasis added)—not *maximum* deterrence— and Ms. Patel respectfully submits that the plea agreement does just that.

**CONCLUSION**

Ms. Patel is profoundly remorseful for her involvement in the offense conduct and accepts full responsibility for her wrongdoing. For the reasons set forth above, Ms. Patel joins both the Government and the Probation Office in respectfully requesting that the Court accept the plea agreement and impose the penalties set forth therein.

Dated: January 29, 2025

Respectfully submitted,

THE JACOBS LAW FIRM, PC

By: *[signature]*
Matthew Jacobs
5743 Corsa Ave., Ste. 208
Westlake Village, CA 91362
Tel: (805) 601-7504
Email: matt@jacobslawfirm.com

*Attorney for Defendants Varsha Patel and Sarang Hospitality, LLC*